UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

     Plaintiff,

                                      Case No. 19-cr-20139

v.                                     Hon. Arthur J. Tarnow

WALTER SHERROD,

     Defendant.

_____/

## Response in Opposition to [28] Sherrod's Motion for Compassionate Release

Defendant Walter Sherrod seeks compassionate release under 18 U.S.C.

§ 3582(c)(1)(A)(i). This motion should be denied, given that the defendant has

been vaccinated against COVID-19,[1] and therefore does not present an

extraordinary and compelling reason permitting relief.

## I.    Background

### A.    Criminal Conduct

Between October and December of 2018, a confidential informant, at the

direction of FBI agents, made several controlled buys of cocaine and heroin from

---

[1] The government submits that by the time the Court likely decides this matter Sherrod will have received his second shot of the Pfizer vaccine (he has already received the first). For that reason, throughout this response, the government refers to Sherrod as being fully vaccinated.

Sherrod. PSR ¶ 11. On December 20, 2018, Sherrod possessed, at his residence, at least 133 grams of cocaine, 74 grams of heroin, and 1,170 grams of marijuana, all of which he intended to distribute. ECF No. 20, Rule 11 Plea Agreement, Factual Basis. On the same day, Sherrod also possessed, at his residence, a lever action long gun .44 Magnum, Taurus .38 special revolver, Smith & Wesson .38 special revolver, Mossberg 12 gauge Model 88 shotgun, and Ruger 10/22 carbine .22LR, all of which he used to protect controlled substances and proceeds from distributing controlled substances. *Id*.

On March 13, 2019, Sherrod was charged in a six-count Indictment. PSR ¶ 4. On September 11, 2019, Sherrod plead guilty to Counts 2-4 and 6 of the Indictment (PWID cocaine, PWID heroin, PWID marijuana, and possession of firearms in furtherance of a drug trafficking crime, respectively), pursuant to a Rule 11 Plea Agreement. *Id*. at ¶ 6. Count 6 carried a five-year mandatory minimum sentence, consecutive to any other sentence. **Pursuant to the Rule 11 Plea Agreement, the government agreed to dismiss remaining counts, including Count 1 (PWID 28 grams or more of crack cocaine), which would have carried a separate five-year mandatory minimum sentence (i.e., Sherrod's total mandatory minimum sentence would have been ten years if he plead guilty to Counts 1 and 6).** The parties agreed that the sentence in this case should be 96 months. *Id*. at ¶ 7.

The parties calculated an offense level of 21 and a sentencing guideline range of 37-46 months (on Counts 2-4) plus 60 months mandatory minimum (on Count 6), for a total of 97-106 months. PSR ¶ 7. Probation calculated an offense level of 23 and a sentencing guideline range of 46-57 months (on Counts 2-4) plus 60 months mandatory minimum (on Count 6) for a total of 106-117 months. PSR ¶¶ 28, 51-52.

On December 12, 2019, the Court sentenced Sherrod to 36 months (on Counts 2-4) plus 60 months (on Count 6), for a total of 96 months. ECF No. 24, Judgment.

Sherrod is serving his sentence at FCI Morgantown. He has an anticipated release date of **December 16, 2026**. He has served a very small portion of his 96 months sentence. He has not committed any disciplinary infractions during his time in BOP custody.

### B.    Request for Compassionate Release

On April 13, 2021, Sherrod submitted a request for compassionate release to the warden. Sherrod's request did not reference any specific health conditions that might make him more susceptible to contracting COVID-19. His request vaguely referenced his "medical history and condition do to the cov.19." On May 10, 2021, the warden denied his request.

Sherrod's motion for compassionate release (ECF No. 28) should be denied because Sherrod (1) failed to exhaust his administrative remedies (because the conditions alleged in his administrative request are less than what is alleged in his motion, which means he did not give BOP an opportunity to adequately review his claim before motioning this Court) *and* (2) he has been fully vaccinated against COVID-19. Therefore, based on #1 *or* #2, he is ineligible for compassionate release.

The undersigned obtained Sherrod's medical records from BOP, which have been (or will be) filed under seal. The records reveal that Sherrod is obese (diagnosed 5/25/2021, although his BMI is not specified), denied hypertension (during a 2/9/2021 clinical encounter), reported that he smoked one pack of cigarettes per day for 20 years (during a 2/28/2020 clinical encounter), denied the COVID-19 vaccine (on 4/2/2021), and (later changed his mind and) obtained the first shot of the Pfizer COVID-19 vaccine (on 7/14/2021).

## C.    Exhaustion Argument[2]

Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to

---

[2] The government provides its exhaustion requirement for completeness, but also relies on the fact that Sherrod has been fully vaccinated, which disqualifies him from compassionate release consideration.

- 4 -

move for it too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).

But the provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). As the Sixth Circuit held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at 832–36; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Section 3582(c)(1)(A) also means that an inmate may not move for compassionate release on a different ground than the one he raised during the administrative process. The whole point of § 3582(c)(1)(A)'s exhaustion requirement is to ensure that the Bureau of Prisons has the opportunity to evaluate and consider an inmate's request first, while allowing the inmate to seek relief in court if the Bureau of Prisons denies or fails to act upon the request. *Alam*, 960 F.3d at 835–36. So when "the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion

requirement because he does not give the BOP an opportunity to act on the request before [he] brings his request to the courts." *United States v. Asmar*, 465 F.Supp.3d 716, 719 (E.D. Mich. 2020); *accord United States v. Mogavero*, No. 15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden."); *United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020).

Furthermore, although district courts have split on this issue, the Seventh Circuit recently held that § 3582(c)(1)(A) requires issue-specific exhaustion.  In *United States v. Williams*, 987 F.3d 700 (7th Cir. 2021), the court opined that § 3582(c)(1)(A)'s exhaustion requirement more closely resembles the exhaustion requirement in the Prison Litigation Reform Act (PLRA). *Williams*, 987 F.3d at 703. The PLRA requires "proper exhaustion" of available administrative remedies in order to afford prisons an opportunity to address issues before they are brought to federal court.  *Williams*, 987 F.3d at 703; *see* 42 U.S.C. § 1997e(a).  Because an inmate cannot satisfactorily exhaust under the PLRA by filing a grievance on one ground and then suing in court on an unrelated ground, the court held that an inmate must raise the same issues in the Bureau of Prisons and federal court in order to exhaust under § 3582(c)(1)(A). *Williams*, 987 F.3d at 704.

The best reading of Sixth Circuit law is also that § 3582(c)(1)(A) requires issue-specific exhaustion. As the Sixth Circuit has explained, an exhaustion statute "written in more general terms" commands "issue exhaustion if an agency's rules so require." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)); *accord Cuevas-Nuno v. Barr*, 969 F.3d 331, 334–35 & n.4 (6th Cir. 2020). Section 3582(c)(1)(A) is just such a statute, and the agency's rules here require an inmate to identify "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration" for compassionate release. 28 C.F.R. § 571.61(a)(1).

Thus, an inmate seeking relief based on a combination of Covid-19 and a particular medical condition or conditions must first make *that* specific request to the Bureau of Prisons before seeking relief in court. *Island Creek Coal Co.*, 937 F.3d at 746–47; *see Alam*, 960 F.3d at 834–36 (emphasizing the issue-specific nature of exhaustion under § 3582(c)(1)(A)).

Sherrod did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement. Sherrod's motion for compassionate release should therefore be dismissed for failure to exhaust. *Alam*, 960 F.3d at 836.

### D.    BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was

prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. We therefore focus primarily on considerations specific to the defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[3] This

---

[3] This Court does not have authority to grant a transfer to home confinement,

initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected and some may succumb, just as in the population at large. But it is notable

---

or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20, 2020) (Sanchez, C.J.); *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3 (E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020) (Kearney, J.); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

that the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

Specifically as it relates to the defendant, BOP's aggressive efforts have extended to FCI Morgantown. That institution houses 409 inmates. At present, there are 0 inmates who are reported positive. There are also 158 current inmates who previously tested positive and have recovered. There have been 0 COVID-related deaths at this institution. The latest statistics are available at www.bop.gov/coronavirus.

### E.  Vaccinations

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP receives the COVID-19 vaccine as it becomes available. As of the week of February 8, 2021, doses of the vaccine had been delivered to every BOP institution.

BOP offered the vaccine first to full-time staff because staff members—who come and go between the facility and the community—present a more likely vector for COVID-19 transmission into an institution. As of this time, vaccines have been administered to all willing staff members, and BOP continues to encourage staff

members who have not accepted a vaccine to do so. (Staff members may also obtain and have obtained vaccinations from other providers in the community.)

BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines. In general, the vaccine is offered first to inmates over 75 years of age; then to inmates over 65 years of age; then to inmates of any age who present a condition identified by the CDC as presenting a risk of severe COVID-19 disease; and then to all inmates. As of this time, BOP has administered a total of 202,346 doses to staff and inmates nationwide. As of mid-April 2021, BOP estimated that if it continued to receive doses at the then-current pace it will have offered a vaccine to every inmate in its custody by June 1, 2021. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

At FCI Milan, where the defendant is held, BOP has fully vaccinated 96 staff members, and 245 inmates (which is 60% of the current inmate population, and does not account for those additional inmates who declined vaccination).

The clinical guidance provided to BOP health services professionals is available at

https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf.

The latest information on BOP's vaccination efforts, including the number of

completed vaccinations at each institution, is available at

https://www.bop.gov/coronavirus/, and is updated every weekday.

## II.    Argument

### A.    Governing Law

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended

by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not
> modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days from the receipt of
> such a request by the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment (and may impose a term of probation
> or supervised release with or without conditions that does not exceed the
> unserved portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are applicable, if it
> finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general

policy statements regarding the sentencing modification provisions in section

3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[4]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Sixth Circuit has concluded that this policy statement is not currently binding in connection with motions filed by defendants, *see United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), the courts of appeals have recognized that it continues to provide important "guideposts." *United States v. McGee*, -- F.3d --, 2021 WL 1168980, at *10 (10th Cir. Mar. 29, 2021); *see United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in §

---

[4] The inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

1B1.13 and its Application Notes provide a working definition of 'extraordinary

and compelling reasons'; a judge who strikes off on a different path risks an

appellate holding that judicial discretion has been abused.").

In application note 1 to the policy statement, the Commission identifies the

"extraordinary and compelling reasons" that may justify compassionate release.

The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets
> the requirements of subdivision (2) [regarding absence of danger to the
> community], extraordinary and compelling reasons exist under any of the
> circumstances set forth below:
>
> (A)    Medical Condition of the Defendant.—
>
> >    (i)    The defendant is suffering from a terminal illness (i.e., a serious
> >           and advanced illness with an end of life trajectory). A specific
> >           prognosis of life expectancy (i.e., a probability of death within a
> >           specific time period) is not required. Examples include
> >           metastatic solid-tumor cancer, amyotrophic lateral sclerosis
> >           (ALS), end-stage organ disease, and advanced dementia.
> >
> >    (ii)   The defendant is—
> >
> >    >    (I)     suffering from a serious physical or medical condition,
> >    >
> >    >    (II)    suffering from a serious functional or cognitive
> >    >            impairment, or
> >    >
> >    >    (III)   experiencing deteriorating physical or mental health
> >    >            because of the aging process,
> >
> >           that substantially diminishes the ability of the defendant to
> >           provide self-care within the environment of a correctional
> >           facility and from which he or she is not expected to recover.

- 14 -

(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.—

(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.).  As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted). That statutory requirement means that a defendant's reasons for release must satisfy two strict criteria. 18 U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D.

- 15 -

Mich. Jan. 31, 2020). The reasons must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold. Sherrod has satisfied neither.

## B.    COVID-19 and Compassionate Release

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen,

J.) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

The government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (Ranjan, J.)).

The CDC's list of risk factors was most recently updated on March 29, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." An inmate who has not been

offered a vaccine, who presents a condition on that list, presents an "extraordinary

and compelling reason" allowing consideration of compassionate release.[5]

---

[5] Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the government maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g.*, *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (Cogburn, J.); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (Slomsky, J.) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. The government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors, updated on March 29, 2021, states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."

### C.     The Defendant's Circumstances

Here, Sherrod presents the risk factors of obesity and history of smoking,

although it is unclear if his conditions are severe enough and ones from which he

might recover. Regardless, he no longer presents an "extraordinary and compelling

reason" because he has been vaccinated.

BOP administered to Sherrod his first dose of the Pfizer COVID-19 vaccine

on 7/14/2021 (with the second dose expected by the time the Court likely decides

this motion). As a result, the defendant's motion for compassionate release should

be denied.

The defendant has received a vaccine approved by the FDA for emergency

use based on its conclusion that, in extensive testing, the vaccine was 95%

effective in preventing COVID-19 infection, including in participants with medical

comorbidities associated with high risk of severe COVID-19 disease. *See* FDA

Decision Memorandum, Pfizer – Dec. 11, 2020,

https://www.fda.gov/media/144416/download.

Various studies continue to confirm the efficacy of the vaccines. For

instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000

participants in its Phase 3 trial. It found that the vaccine, based on mRNA

technology (like the Moderna vaccine), was 91.3% effective against COVID-19,

measured seven days through up to six months after the second dose, across age,

gender, race, and ethnicity demographics, across participants with a variety of

underlying conditions, and during a period through March 13, 2021, when variants

were circulating. Pfizer further found that the vaccine was 100% effective against

severe disease as defined by the CDC and 95.3% effective against severe disease

as defined by the FDA.

https://www.businesswire.com/news/home/20210401005365/en/.

The CDC likewise recently reported the effectiveness of the Pfizer and

Moderna vaccines in preventing infection during the same period, and concluded

that its extensive data "reinforce CDC's recommendation of full 2-dose

immunization with mRNA vaccines. COVID-19 vaccination is recommended for

all eligible persons . . . ." "Interim Estimates of Vaccine Effectiveness,"

https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Thus, the defendant has provided effective "self-care" against the virus, and

does not present any extraordinary and compelling reason allowing compassionate

release. As one court recently summarized:

> Here, Defendant is not at high risk of contracting severe COVID-19 because
> Defendant will have received both does of the Pfizer vaccine by the time he
> would be released. According to clinical trials published on the CDC's
> website, the Pfizer vaccine was 95% effective at preventing COVID-19 in
> people who did not have a previous infection. More importantly for purposes
> of this motion, clinical trials have shown that the Pfizer vaccine is 100%
> effective at preventing severe disease. Therefore, because Defendant will be
> at little-to-no risk of severe COVID-19 shortly after receiving his second
> Pfizer dose, there are no "extraordinary and compelling reasons" justifying a
> compassionate release in this case. *See United States v. Miller*, No. 13-

20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen. Over forty million individuals have been fully vaccinated in the United States, and the court does not know of a single confirmed death of a fully vaccinated individual from COVID-19.").

*United States v. Groom*, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021)

(Sargus, J.).

Recent decisions overwhelmingly agree with this assessment. *See, e.g.*,

*United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021) (Logan, J.);

*United States v. Godoy-Machuca*, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021)

(Humetewa, J.) (defendant also recovered from COVID-19, providing an

additional measure of protection); *United States v. Grummer*, 2021 WL 568782, at

*2 (S.D. Cal. Feb. 16, 2021) (Sabraw, C.J.) (denying compassionate release to

defendant with several chronic medical conditions when defendant had been fully

vaccinated against COVID-19); *United States v. Poupart*, 2021 WL 917067, at *1

(D. Conn. Mar. 10, 2021) (Arterton, J.); *United States v. Shepard*, 2021 WL

848720, at *5 (D.D.C. Mar. 4, 2021) (Moss, J.); *United States v. Stewart*, 2021 WL

1011041, at *2 (D. Haw. Mar. 16, 2021) (Mollway, J.); *United States v. Decano*,

2021 WL 1095979, at *6 (D. Haw. Mar. 22, 2021) (Gillmor, J.); *United States v.

Johnson*, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021) (Russell, J.); *United

States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021) (Barbier, J.);

*United States v. McGill*, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021)

(Gallagher, J.); *United States v. Gabbard*, 2021 WL 1037724, at *3 (E.D. Mich.

Mar. 18, 2021) (Cox, J.); *United States v. Williams*, 2021 WL 1087692, at *3 (D.

Minn. Mar. 22, 2021) (Frank, J.); *United States v. Burks*, 2021 WL 1291935, at *2

(D. Minn. Apr. 7, 2021) (Magnuson, J.); *United States v. Wakefield*, 2021 WL

640690, at *3 (W.D.N.C. Feb. 18, 2021) (Reidinger, C.J.) (defendant presents

obesity, diabetes, and hypertension, but he previously tested positive, and has

received the first dose; "Because he has already contracted the virus and recovered

without complication, and because he is in the process of being vaccinated, the

Defendant cannot meet his burden of establishing that his COVID-19 risk is an

extraordinary and compelling reason for his release."); *United States v. Williams*,

2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) (Bell, J.); *United States v.

Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (Crotty, J.) (also

rejected other objections based on conditions at Fort Dix, where the inmate

received the first dose of the Moderna vaccine, and also recovered from COVID-

19); *United States v. Cardoza*, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021)

(Jones, J.); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15,

2021) (Kearney, J.) ("The risk posed to an inoculated Mr. Roper is not an

extraordinary and compelling reason for his release."); *United States v. Stiver*,

2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021) (Bissoon, J.); *United States v.*

*Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (Rainey, J.) (denying

compassionate release to defendant with underlying health conditions when

defendant had received first vaccine dose); *United States v. Ballenger*, 2021 WL

308814, at *4 (W.D. Wash. Jan. 29, 2021) (Settle, J.); *see also United States v.

Lipscomb*, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) (Chappell, J.)

(inmate received both doses; "What's more, this demolishes Lipscomb's

conclusory contention BOP is not taking adequate precautions. Currently, tens—if

not hundreds—of millions of Americans are scurrying to figure out how to get a

vaccine. Yet Lipscomb already received both doses. This does not suggest BOP is

taking COVID-19 lightly or not protecting Lipscomb.").

Defendants have contested this consensus, pointing out that the vaccines

may not be 100% effective, that they were not tested in a congregate setting, that

they may not be effective for all individuals, and that variants may emerge that

bypass the vaccines. These courts and others have almost uniformly rejected these

arguments. One explained:

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19,
> the Court concludes that Rodriguez's obesity and hypertension are not
> extraordinary and compelling reasons justifying his release. . . . Rodriguez
> argues that it is unclear how effective the Pfizer vaccine is, how long its
> effects will last, and whether it protects against the COVID variants, leaving
> a risk that he could still become seriously ill. Although all evidence to date is
> that the Pfizer vaccine is very effective, no one claims that it is 100 percent
> effective, and thus there remains a small risk that Rodriguez could be
> infected by COVID-19 and become seriously ill from that infection. But
> every prisoner runs a small risk of lots of serious medical conditions

> (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 2021 WL 1187149, at *1-2 (D. Minn. Mar. 30, 2021) (Schlitz, J.). Accordingly, the prevailing view is that "absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.); *see also, e.g.*, *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) (denied after first dose, and rejects speculation regarding future effectiveness against variants: "Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation."); *United States v. Kariblghossian*, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (Snyder, J.) ("Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19) (citing CDC studies and Yang Liu, et. al., Neutralizing Activity of BNT162b2-Elicited Serum, The New England Journal of Medicine (March 8, 2021),

https://www.nejm.org/doi/full/10.1056/NEJMc2102017?query=featured_home));

- 24 -

*United States v. Goston*, 2021 WL 872215, at *3 (E.D. Mich. Mar. 9, 2021) (Levy,

J.) (finding the potential that the Pfizer vaccine does not protect against variants

inadequate to justify release); *United States v. Brown*, 2021 WL 1154207, at *3

(S.D.N.Y. Mar. 26, 2021) (Wood, J.) (speculation about variants is insufficient);

*United States v. Del Rosario Martinez*, 2021 WL 956158, at *3 n.10 (S.D. Cal.

Mar. 10, 2021) (Anello, J.) (declining to rely on a frequently submitted declaration

of Dr. Tara Vijayan, stating, "with all due respect to Dr. Vijayan's expertise and

experience, the Court declines to contribute in any fashion to public skepticism

regarding the safety and efficacy of the available COVID-19 vaccines or to

second-guess the Food and Drug Administration's findings and decision to issue

Emergency Use Authorizations for COVID-19 vaccines 'for which there is

adequate manufacturing information to ensure its quality and consistency.' The

Path for a COVID-19 Vaccine from Research to Emergency Use Authorization,

available at www.FDA.gov/COVID19vaccines#FDAVaccineFacts (last visited

3/9/2021).").

It is possible that the scientific consensus may shift dramatically if vaccine-

resistant variants emerge or the vaccines prove less efficacious than studies to date

suggest. If those possibilities materialize, nothing would prevent the defendant

from filing another motion for compassionate release. *United States v. Singh*, 2021

WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021) (Brann, J.) ("Indeed, the majority of

CDC recommendations for fully vaccinated people indicate that the CDC's primary concern is not with fully vaccinated individuals being hospitalized due to COVID-19, but with such individuals potentially spreading the virus to unvaccinated individuals. . . . It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, Singh has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon Singh to demonstrate that compassionate release is warranted.").

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus. As inmates are vaccinated, this unprecedented period, in which the threat of the virus sometimes gives rise to "extraordinary and compelling" circumstances, should come to an end, and sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("a defendant's medical condition must be one of substantial severity and

irremediability."); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (Pepper, J.) (must be extraordinary; "Many inmates suffer from pain and mental illness."). At present, the defendant does not present any such condition.

For all of these reasons, compassionate release is not warranted here. Further, even if the defendant were at elevated medical risk (which he is not), the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate before relief can be granted. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same).

This Court's "initial balancing of the § 3553(a) factors during Sherrod's sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). The defendant must therefore "make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* Here, even if the Court were to find that Sherrod established extraordinary and

- 27 -

compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, Sherrod's remaining sentence weighs heavily against release. Sherrod's original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008. Sherrod was sentenced to 96 months, which was *below* his guideline range of 106 to 117 months.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant who was sentenced below his guideline range, like Sherrod, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

At present, these considerations – including the defendant's risk of danger to the community, his vaccination, and BOP's strenuous efforts to protect inmates against the spread of COVID-19 – counsel strongly against relief.

The defendant continues to present a danger to the community, and should be required to serve the sentence that this Court imposed for his criminal conduct.

The defendant possessed numerous drugs for distribution and numerous firearms to further his drug trafficking, both of which endanger the community. There is no doubt that at the time of his offense, the defendant was engaged in prohibited conduct that presented a significant danger to the community.

The defendant fails to demonstrate how release for drug and firearms crimes reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). A consideration of the factors above shows that release at this point is inappropriate based on the offense of conviction, the defendant's managed medical condition(s), and the amount of time remaining on the defendant's sentence.

To date, courts have generally granted compassionate release where the inmate suffers from significant ailments that specifically raise the risk of an adverse outcome from COVID-19, is serving a short sentence or has served most of a lengthier one, does not present a danger to the community, and/or is held at a facility where a notable outbreak has occurred. A court recently summarized: "The common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are either (1) properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or (2) in cases where the defendants had severe medical

conditions that placed them at high risk of coronavirus complications, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Ball*, 2020 WL 4816197, at *6 (E.D. Mich. Aug. 19, 2020) (Lawson, J.).

In sum, upon consideration of all pertinent factors, the motion for compassionate release should be denied.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*/s/ Paul A. Kuebler*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9641
paul.kuebler@usdoj.gov
NY4268561

Dated: July 20, 2021

**Certificate of Service**

I hereby certify that on July 20, 2021, the foregoing paper was electronically filed with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

/s/ Paul A. Kuebler
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9641
paul.kuebler@usdoj.gov
NY4268561