UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WALTER SHERROD,

    Defendant.
_____/

Case No. 19-20139

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER GRANTING WALTER SHERROD'S MOTION FOR COMPASSIONATE RELEASE [28]**

On September 11, 2019, Walter Sherrod pleaded guilty to three counts of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), and one count of Possession of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). (ECF No. 20, PageID.51). He was sentenced to eight years in prison on December 12, 2019. (ECF No. 24, PageID.84).

On June 14, 2021, Sherrod moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 28). The Court appointed the Federal Community Defender and set a briefing schedule. (ECF No. 29). On August 3, 2021,

1

following the submission of the briefs, the Court held a hearing. For the reasons outlined below, Sherrod's Motion [28] will be **GRANTED.**

## BACKGROUND

Sherrod was born in Detroit, Michigan, in 1979, and is the youngest of three siblings. (PSR ¶¶ 35-36). Sherrod's parents separated when he was four and he was primarily raised by his mother. (*Id.* ¶ 35). Sherrod has good relationships with his mother, stepfather, and siblings, all of whom still live in Detroit.[1] (*Id.* ¶¶ 35-36). Sherrod also has three children from previous relationships and, prior to being incarcerated, paid some child support. (*Id.* ¶ 37). Sherrod is engaged and has been in a relationship with his fiancé for thirteen years. (ECF No. 28, PageID.98).

Sherrod was expelled from high school in the twelfth grade and has been self-employed for most of his adult life. (PSR ¶¶ 43, 45). He was arrested for the instant offenses on December 20, 2018, after FBI agents executed a warrant at his home and discovered cocaine, heroin, and marijuana, as well as five firearms, which he kept for protection. (*Id.* ¶¶ 12-13). A confidential informant had previously made several purchases of cocaine and heroin from Sherrod at the FBI's direction. (*Id.* ¶ 11). Prior to this case, Sherrod had no criminal history apart from a single conviction for driving without a valid license. (*Id.* ¶ 30).

---

[1] Sherrod's father passed away in 2009. (*Id.* ¶ 35).

Sherrod is forty-two years old, incarcerated at FCI Morgantown, and scheduled for release on December 16, 2026.[2]

## ANALYSIS

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Once the exhaustion requirement is deemed satisfied, district courts proceed through a three-step inquiry:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [*Dillon v. United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (first four alterations in original) (footnotes omitted). Where the incarcerated person moves for release on their own behalf, the Sentencing Commission's policy statement on compassionate release, § 1B1.13 of the Sentencing Guidelines, is not "applicable," and "district

---

[2] *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 57284-039) (last visited August 4, 2021).

3

courts need not consider it." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). In such cases, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.* at 519-20 (citing *Jones*, 980 F.3d at 1111; *United States v. Ruffin*, 978 F.3d 1000, 1007 (6th Cir. 2020)). Finally, if "any of the three prerequisites listed in § 3582(c)(1)(A) [are] lacking," the motion for compassionate release can be denied the other requirements need not be addressed. *Id.* at 519.

**I. EXHAUSTION**

Sherrod made an administrative request for compassionate release on April 13, 2021. (ECF No. 32-3, PageID.130). The request reached F.J. Bowers, the Warden of FCI Morgantown, on April 27, 2021, and was denied on May 10, 2021. (*Id.* at 129). Ordinarily, this would mean that Sherrod had exhausted. *See Alam*, 960 F.3d at 832. The Government argues, however, that § 3582(c)(1)(A) requires issue-specific exhaustion and that Sherrod's administrative request failed to raise the specific issues he now argues qualify as extraordinary and compelling circumstances. (ECF No. 33, PageID.178).

The Sixth Circuit has never required issue exhaustion in the compassionate release context, and it "is not mandated in any plain terms of the statute." *United*

*States v. Williams*, 473 F. Supp. 3d 772, 775 (E.D. Mich. 2020). As one judge in the Eastern District recently noted:

> [T]he Supreme Court has cautioned courts against imposing issue exhaustion requirements, especially where there is no adversarial administrative proceeding. *See Sims v. Apfel*, 530 U.S. 103, 109-10 (2000). Cases with a compassionate release request made to the BOP are within this category. *See United States v. Brown*, 457 F. Supp. 3d 691, 697 (S.D. Iowa 2020) (holding issue exhaustion is not required because "§ 3582 contains no such requirement and BOP compassionate release requests are not adversarial proceedings"). And while there is a BOP regulation requiring an inmate to detail the circumstances warranting compassionate release in an administrative request, 28 C.F.R. § 571.61(a)(1), that regulation has not been updated since passage of the First Step Act—similar to the Sentencing Commission's policy statement which the Sixth Circuit has held is not applicable to motions for compassionate release filed by defendants on their own behalf. *See* [*United States v.*] *Torres*, 464 F. Supp. 3d [651,] 656 [(S.D.N.Y. 2020)].

*United States v. Ferguson*, No. 10-20403, 2021 U.S. Dist. LEXIS 81752, at *4-6 (E.D. Mich. Apr. 29, 2021). For these reasons, although the Seventh Circuit recently became the first appellate court to hold to the contrary, *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021), this Court will join the majority of district courts in holding that issue exhaustion is not required.

Even if issue exhaustion were required, however, Sherrod's request would still suffice. In writing to Warden Bowers, Sherrod cited his "medical history and condition" as well as COVID-19. (ECF No. 32-3, PageID.130). His Motion [28] cites the same issues, albeit with more detail. (ECF No. 28, PageID.98; ECF No. 32,

5

PageID.110). Because Sherrod's specific medical conditions are detailed in his BOP records, there can be no question that Warden Bowers was able to consider them in denying his request for compassionate release. (ECF No. 32-4, PageID.132-33). Accordingly, Sherrod has satisfied § 3582(c)(1)(A)'s exhaustion requirement.

## II. EXTRAORDINARY AND COMPELLING REASONS

Sherrod's Supplemental Brief argues that the unusually harsh conditions he has faced during the entirety of his incarceration and his increased susceptibility to severe illness from COVID-19 constitute extraordinary and compelling reasons for release. (ECF No. 32, PageID.110-20). The Court agrees.

### A. Extraordinarily Punitive Conditions of Confinement

Sherrod, who remained on bond following his sentencing, self-surrendered two weeks earlier than he needed to, on February 26, 2020. (ECF No. 26; ECF No. 34-10, PageID.324). Due to COVID-19, however, Sherrod was not placed at his designated facility, FCI Morgantown, until nearly a year later. (*Id.* at 323). During this extended waiting period, Sherrod was warehoused at FCI Milan without access to the programs in which the Court intended him to participate and was subject to far more restrictive conditions of confinement than would normally have been the case. *See, e.g.*, *United States v. McRae*, 2021 U.S. Dist. LEXIS 8777, at *12 (S.D.N.Y. Jan. 15, 2021) (noting that "a day spent in prison under extreme lockdown

6

and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison"); *see also* Keri Blakinger, *What Happens When More than 300,000 Prisoners Are Locked Down*, MARSHALL PROJECT (Apr. 15, 2020), https://www.themarshallproject.org/2020/04/15/what-happens-when-more-than-300-000-prisoners-are-locked-down [https://perma.cc/S3WG-8XXU] ("Experts say the widespread use of such restrictions is extraordinary, in scale and in length. . . . . Studies show long-term social isolation comes with a higher chance of dying prematurely, in part because of the physical effects of stress.").

In addition, Sherrod recounted during the hearing how he was placed in solitary confinement on more than one occasion, sometimes for as long as seventeen days, as a means of quarantine. That Sherrod was subject to such extreme measures, particularly when imposed for administrative convenience rather than punishment, is disturbing. *See United States v. Bowlson*, No. 01-cr-80834-1, 2021 U.S. Dist. LEXIS 119868, at *8 (E.D. Mich. June 28, 2021) (discussing the debilitating effect of solitary confinement on mental health and noting that the United Nations has classified prolonged solitary confinement as a form of torture).

7

Although these extraordinarily punitive conditions might, by themselves, be insufficient to justify compassionate release,[3] the Court finds that they support a finding of extraordinary compelling circumstances when viewed alongside Sherrod's heightened susceptibility to severe illness from COVID-19.

### B. Medical Conditions

Sherrod is obese and prior to being incarcerated, smoked a pack of cigarettes per day for approximately twenty years. (ECF No. 32-4, PageID.132-33). According to the Centers for Disease Control and Prevention ("CDC"), both obesity and a history of smoking cigarettes "can make [someone] more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/B4QB-85AG] (last updated May. 13, 2021). This Court has granted compassionate release before on these grounds. *See, e.g.*, *United States v. Andrade*, No. 16-20751, 2020 U.S. Dist. LEXIS 166463, at *6 (E.D. Mich. Sep. 11, 2020). Nevertheless, Sherrod received the first dose of the Pfizer COVID-19 vaccine on July 14, 2021,[4] and the

---

[3] The Court does not reach a decision on this issue.
[4] Sherrod will be "fully vaccinated" on August 18, 2021, two weeks after receiving his second dose on August 4, 2021. *See COVID-19 Vaccines That Require 2 Shots*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html [https://perma.cc/3U7U-Z2AV] (last updated July 22, 2021).

Government argues that regardless of his medical conditions, his vaccination precludes release on COVID-19 grounds. (ECF No. 32-4, PageID.134; ECF No. 33, PageID.195).

For the last several months, district courts have often, but not always, denied motions for compassionate release based on increased susceptibility to COVID-19 where the defendant has been fully vaccinated. *Compare, e.g.*, *United States v. Miller*, No. 13-20928, 2021 U.S. Dist. LEXIS 55193, at *4 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen."), *with United States v. Sweet*, No. 07-20369, 2021 U.S. Dist. LEXIS 69177, at *6 (E.D. Mich. Apr. 9, 2021) ("Although the Court agrees with the government that recovering from COVID-19 and being fully vaccinated decreases one's likelihood of severe COVID symptoms, recent data reveals that the threat of severe illness or death from COVID-19, while diminished, is nevertheless real.").

However, even those decisions denying release have noted that their calculus might change if there were a shift in the scientific consensus. *See, e.g.*, *United States v. White*, No. 15-cr-20040-01, 2021 U.S. Dist. LEXIS 47351, at *5 (E.D. Mich. Mar. 15, 2021) ("Defendant is free to renew his motion should more information emerge

9

suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19."). And unfortunately, it appears that the proliferation of COVID-19 variants has begun to usher in such a shift. *See, e.g.*, *United States v. Wardlow*, No. 19-20254, 2021 U.S. Dist. LEXIS 81161, at *8 (E.D. Mich. Apr. 28, 2021) (noting that "it is as yet not fully known whether the present vaccines provide the same level of protection as with previous variants" and granting release in spite of vaccination).

Over the last several weeks, in particular, there have been disturbing examples of people becoming infected with and spreading the so-called "Delta" variant, despite being vaccinated. *See* Apoorva Mandavilli, *C.D.C. Internal Report Calls Delta Variant as Contagious as Chickenpox*, N.Y. TIMES (July 30, 2021), https://www.nytimes.com/2021/07/30/health/covid-cdc-delta-masks.html [https://perma.cc/9WMP-Q5WF] ("The Delta variant is much more contagious, more likely to break through protections afforded by the vaccines and may cause more severe disease than all other known versions of the virus, according to an internal presentation circulated within the [CDC]" . . . The immediate next step for the agency is to 'acknowledge *the war has changed*,' the document said. . . . The amount of virus in a person infected with Delta is a thousandfold more than what is seen in people infected with the original version of the virus, according to one recent study." (emphasis added)); Berkeley Lovelace, Jr., *Israel to Give Pfizer COVID*

10

*Booster Shots to People over 60 as Efficacy Appears to Wane amid Delta*, CNBC (July 29, 2021), https://www.cnbc.com/2021/07/29/delta-variant-israel-to-give-pfizer-covid-booster-shots-to-elderly-.html [https://perma.cc/SN4Y-84WZ].

In addition, recent research reflects that 1) breakthrough infections are becoming more and more frequent, 2) a significant number of breakthrough infections may lead to so-called "long COVID," and 3) people like Sherrod who have underlying conditions and reside in congregate settings are at highest risk for severe illness, despite vaccination. *See* Rob Stein, *COVID Symptoms May Linger in Some Vaccinated People Who Get Infected, Study Finds*, NPR (July 28, 2021), https://www.npr.org/sections/health-shots/2021/07/28/1021888033/breakthrough-infections-may-cause-long-covid-symptoms-small-study-suggests [https://perma.cc/6YES-FGLC]; Erika Edwards and Laura Strickler, *Rarely, Covid Vaccine Breakthrough Infections Can Be Severe. Who's at Risk?*, NBC NEWS (July 19, 2021), https://www.nbcnews.com/health/health-news/rarely-covid-vaccine-breakthrough-infections-can-be-severe-who-s-n1274164 [https://perma.cc/7UTV-EU3S]; Linda Geddes, *Pfizer Vaccine May Be Less Effective in People with Obesity, Says Study*, GUARDIAN (Feb. 28, 2021), https://www.theguardian.com/world/2021/feb/28/pfizer-vaccine-less-effective-obesity-study [https://perma.cc/52ZE-2KK6].

Meanwhile, nearly forty percent of inmates at FCI Morgantown remain unvaccinated and more likely to transmit the virus. *Compare COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/ZN7K-YFBX] (last updated Aug. 4, 2021) (245 inmates vaccinated), *with FCI Morgantown*, FED. BUREAU PRISONS, https://www.bop.gov/locations/institutions/mrg/ [https://perma.cc/VFM6-52RK] (last visited Aug. 4, 2020) (398 inmates total). Vaccinations are also lagging significantly in the community at large. *See Tracking Coronavirus in West Virginia: Latest Map and Case Count*, N.Y. TIMES, https://www.nytimes.com/interactive/2021/us/west-virginia-covid-cases.html [https://perma.cc/3SDA-6Y6E] (last updated Aug. 4, 2021). Only thirty-nine percent of West Virginia residents are fully vaccinated, and reported COVID-19 cases in Monongalia County, where FCI Morgantown is located, have more than doubled over the past two weeks. *Id.* Particularly considering that post-vaccination infections are often asymptomatic, and that the BOP *still* does not perform regular, universal testing, the fact that FCI Morgantown is currently reporting only two active infections does not persuade the Court that infection rates are low. *See United States v. Agomuoh*, 461 F. Supp. 3d 626, 636 (E.D. Mich. 2020) ("As to FCI Morgantown's lack of confirmed COVID-19 cases, the Court accords no weight to this statistic

12

without evidence that FCI Morgantown has implemented a universal testing regimen.").

At the end of the day, district judges are not epidemiologists. All we can do is listen to the experts and evaluate the risks as best we can from the guidance available. It is this Court's understanding that although COVID-19 vaccines have proven to be very effective in preventing the most severe forms of the disease, the pandemic is far from over, and the risk to vulnerable individuals, even those who have been vaccinated, is not negligible. The Court is not willing to take that risk. Accordingly, the Court finds that despite vaccination, Sherrod's heightened susceptibility to severe illness from COVID-19, in combination with the fact that the entirety of his time in BOP custody has been more punitive and less rehabilitative than the Court intended, satisfies the extraordinary and compelling reasons requirement of § 3582(c)(1)(A)(i).

### III. FACTORS UNDER 18 U.S.C. § 3553(A)

"Section 3553(a) of Title 18 specifies the factors courts are to consider in imposing a sentence." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017). It states:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

13

    **(1)**  the nature and circumstances of the offense and the history and characteristics of the defendant;
    **(2)**  the need for the sentence imposed—
        **(A)**  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        **(B)**  to afford adequate deterrence to criminal conduct;
        **(C)**  to protect the public from further crimes of the defendant; and
        **(D)**  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    **(3)**  the kinds of sentences available;
    **(4)**  the kinds of sentence and the sentencing range established for—
        **(A)**  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
        [. . .]
    **(5)**  any pertinent policy statement—
        [. . .]
    **(6)**  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
    **(7)**  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (emphasis added).

In the compassionate release context, "'as long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Jones*, 980 F.3d at 1114 (alterations in original) (emphasis omitted) (citations omitted) (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th

Cir. 2010)). The Court's consideration of these factors is demonstrated both below and on the record of the August 3, 2021, hearing.

The instant offenses did not involve violence and were Sherrod's first felonies. (PSR ¶¶ 11-13, 30). Other than this case, nothing in Sherrod's past suggests he would be a danger to the community upon release. Indeed, while on pre-trial release, Sherrod's conduct was so good that the Court felt comfortable removing electronic monitoring. (ECF No. 19). He has continued this good behavior in prison, maintaining perfect conduct. (ECF No. 32-7, PageID.165). Given Sherrod's nearly non-existent criminal history and his spotless record on pre-trial release and in prison, the Court finds the roughly seventeen months he has served thus far to be sufficient to protect the public. In addition, to the extent that incarceration can promote deterrence,[5] the Court finds that any specific or general deterrent effect would have been felt at the time Sherrod was caught and prosecuted and would not be minimized by the Court granting him compassionate release.

---

[5] More and more research now suggests that "imprisonment . . . has, on balance, no rehabilitative or deterrent effects after release." David J. Harding et al., *A Natural Experiment Study of the Effects of Imprisonment on Violence in the Community*, 3 NAT. HUM. BEH. 671, 671 (2019); *see, e.g.*, Jennifer E. Copp, *The Impact of Incarceration on the Risk of Violent Recidivism*, 103 MARQ. L. REV. 775, 787 (2020) ("[T]o date, prison policy has largely ignored research on imprisonment and reoffending. . . . At present, we have enough evidence to be fairly confident [that] . . . prison does not seem to be any more effective than non-custodial sanctions at reducing recidivism . . . .").

Next, as discussed in Section II.A, Sherrod has faced more punitive conditions of confinement than would have normally been the case in light of the BOP's COVID-19 lockdown measures. *See McRae*, 2021 U.S. Dist. LEXIS 8777, at *12 ("While such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing."). Against this backdrop, and considering that this was Sherrod's first time in prison, the Court finds that the period he has served thus far, although only about twenty percent of his statutory term, has been sufficient to provide a just punishment, reflect the seriousness of his crimes, and promote respect for the law. (ECF No. 34-10, PageID.325); *see also United States v. Browning*, No. 19-20203-2, 2021 U.S. Dist. LEXIS 38058, at *16 (E.D. Mich. Mar. 2, 2021) (noting that "unusually burdensome" conditions of lockdown have been "harsher punishment than is ordinarily the case," and granting compassionate release despite defendant having served only about twenty percent of his ten-year sentence).

Sherrod's release plan, which has been verified by the Probation Department, is to move in with his fiancé in Detroit, continue the GED studies he started in April (as mandated by the terms of his supervised release), and re-enter the workforce. Sherrod provides several letters from family members in Detroit, which bolster the Court's conclusion that the instant criminal conduct was an aberration from an

16

otherwise law-abiding existence and there is a strong support system in place to help him stay on the right track.

Accordingly, the Court concludes that a sentence reduction to time served is warranted under the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Sherrod's Motion for Compassionate Release [28] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Sherrod be **IMMEDIATELY RELEASED** to begin his three-year term of **SUPERVISED RELEASE**, as outlined by the December 12, 2019, Judgment [24], including the following additional Special Conditions:

> **The defendant shall undergo a strict fourteen-day quarantine upon his release and shall fully comply with any applicable state or local public health restrictions.**

**SO ORDERED.**

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: August 6, 2021     Senior United States District Judge